UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRIAN G. KENT, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 1:15-cv-12167-IT |
| | * | |
| NANCY A. BERRYHILL, Acting | * | |
| Commissioner of the Social Security | * | |
| Administration, | * | |
| | * | |
| Respondent. | * | |

MEMORANDUM & ORDER

March 15, 2017

TALWANI, D.J.

Petitioner Brian G. Kent seeks judicial review of a final decision by the Acting Commissioner of Social Security ("Commissioner"),[1] denying his applications for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI"). The Commissioner has filed a cross-motion to affirm. In light of an error made at Step 4 of the sequential evaluation process, the Commissioner's Motion to Affirm the Commissioner's Decision [#29] is DENIED. Kent's Motion for Order Reversing the Commissioner's Decision [#24] is ALLOWED as to a remand, and the case is hereby REMANDED for further proceedings consistent with this order.

---

[1] The action named Carolyn W. Colvin, the former Acting Commissioner as the respondent. Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin.

I.      Background

Kent injured his back as a child and sustained further injuries in an automobile accident years ago. For more than a decade, he has suffered from joint arthritis and chronic pain, and he reports difficulty coping with these conditions and the limitations they impose on his life. Kent, whose educational background is in computer-aided design and manufacturing technologies, has held many jobs throughout his life, including work as a sales associate at an electronics store, a software tester, a campground caretaker, a driver, and a technical consultant. However, he contends that, as a result of chronic pain, he has worked only intermittently since 2008 and has not been able to work at all since 2010.

Kent applied for SSDI in July 20, 2012, and filed his SSI application on August 7, 2012. Citing an onset date of March 1, 2008, he alleged disability due to chronic lower back trauma and joint arthritis. Kent further reported symptoms of depression, difficulty concentrating, and memory problems triggered by chronic pain. His applications were denied both initially and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on December 19, 2013.[2] In a written decision issued on January 31, 2014, the ALJ found that Kent is not disabled under the Social Security Act and thus is ineligible for SSI and SSDI benefits. On March 29, 2015, the Appeals Council denied Kent's request for review, effectively adopting the decision of the ALJ as the final decision of the Commissioner. Kent filed the instant action on June 3, 2015.

---

[2] Although Kent appears *pro se* before this court, he was represented by counsel in the proceedings before the ALJ.

A. *Medical Evidence*

1. Lower Back Trauma, Joint Arthritis, and Obesity

Medical records provided to the Social Security Administration ("SSA") divulge a history of lower back pain spanning many years and a course of treatment for pain in his back, shoulders, and joints. Radiological imaging reports reflect degenerative disc disease at the L4-L5 and L5-S1 levels. Based on an MRI performed in 2012, Kent was diagnosed with dextroconvex lumbar scoliosis, moderate lumbar spondylosis with small posterior L2-3 through L5-S1 intervertebral disc protrusions, and moderate L2-3 through L5-S1 articular facet joint degenerative hypertrophy with mild to moderate narrowing of lumbar neural foramina. Treatment has included physical therapy and periodic use of anti-inflammatory medication. Past epidural injections did not afford "significant relief." Although Kent had shoulder surgery in 2000, there have been no surgical interventions in recent years.

Records from Kent's treating physicians report normal strength, sensation, and reflexes, and moderate loss of range of motion. Most records describe Kent as having a normal gait, although an orthopedic physician noted "an antalgic gait" at a June 2013 office visit. Notes from physical examinations in July 2012 and September 2013 do not indicate joint tenderness, although an orthopedic physician wrote in November 2012 that an "[e]xamination of the right shoulder reveals very mild Neer and Hawkins impingement findings, tenderness over the AC joint, and pain with cross-body testing."

Kent's medical records note exogenous obesity, with a body-mass index of approximately forty. He does not have cardiovascular disease or experience shortness of breath—both commonly associated with obesity. See Titles II & XVI: Evaluation of Obesity, SSR 02-1P (S.S.A. Sept. 12, 2002). However, medical records indicate borderline hypertension,

elevated cholesterol, hyperglycemia, and elevated blood pressure.

The medical records provided to the SSA do not contain notations that Kent is unable to work, nor do they include recommendations for disability benefits.[3] However, starting in 2012, various medical records refer to him in passing as "disabled" or as having a "disability." For instance, Kent's orthopedic physician noted in August 2012 that he "currently has severe back pain and degenerative disc disease and he has a disability."

    2. Mental Health

Documentary evidence of Kent's mental health is comprised of treatment records from his primary care physicians, a December 2012 report of a psychological evaluation conducted in conjunction with a MassHealth application, and a consultative evaluation report from a psychologist retained by the SSA. Records from Kent's primary care office visits in 2013 describe normal mood and mental functioning. Specifically, physical examination records from March, July, and September 2013 noted that Kent "denie[d] sleep problems, mood swings, depressed mood, confusion, suicidal thoughts, memory loss, increased irritability/anger, anxiety/panic attacks, difficulty concentrating, hallucinations, excessive energy, [and] decreased energy."

The psychologist who evaluated Kent in December 2012 in connection with his MassHealth application noted that

---

[3] Kent has filed in this court medical records submitted by two orthopedic physicians to the University of Massachusetts' Disability Evaluation Services in conjunction with his 2012 and 2014 applications for Massachusetts Emergency Aid to the Elderly, Disabled and Children. Both documents predated the Commissioner's final decision, and the former predated the ALJ decision. Because they were not presented to the SSA, they are not considered in the first instance by the court. See 42 U.S.C. § 405 ("The court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." (emphasis added)).

> [h]e seems to be depressed, but it is sort of an interesting type of existential angst or depression and not really [one] that has specific symptoms, other than the fact that clearly he says that he does not have motivation, no energy[,] and that he is sad . . . . He does not endorse any particular type of anxiety syndrome[.]

He noted that Kent had difficulty reading and "subtract[ing] serial 7s correctly." The psychologist provided an Axis I diagnosis of moderate depression and noted on Axis IV that Kent had a "[q]uite significant character disorder" and "[s]ome depression secondary really to the character disorder and to his physical problems." He assigned him a Global Assessment of Functioning ("GAF") score of forty-eight. The psychologist who examined Kent one week later at the behest of the SSA reached a different conclusion—diagnosing him with recurrent and moderate Major Depressive Disorder and Generalized Anxiety Disorder and reporting a GAF score of sixty-five.

B. *Kent's Testimony*

Kent, who was fifty-three years old at the time of the hearing before the ALJ, testified that he experiences chronic pain in his lower back and osteoarthritis in his ankles, knees, hands, and shoulders. He reported that the pain has become "progressively worse" with age. On a scale from one to ten, with ten being the worst, Kent stated that his pain ranges from a four to an eight, with infrequent acute pain. He testified that "[s]ometimes the pain interferes with [his] concentration and [his] focus" and that frequent movement causes fatigue. He explained that he has difficulty standing still for more than ten to fifteen minutes or walking for more than fifteen to thirty minutes. He testified that he would be unable to "get through an eight-hour workday by alternating [between] sitting and standing."

Kent treats his pain with anti-inflammatories and physical therapy and is not undergoing mental health treatment or taking psychiatric medications. He takes a prescription medication for

high cholesterol. Kent testified that he drives, often joins a friend for walks, does laundry at a laundromat, manages his finances, uses a computer, performs maintenance work on his van, and periodically attends public community events, although he occasionally experiences difficulty engaging in some of these activities.

II.     Standard of Review

Federal courts play a limited role in reviewing a Social Security claim. Although courts consider questions of law *de novo*, Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001), the factual findings made by the Commissioner are "conclusive" when "supported by substantial evidence," 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Upon review, "issues of credibility and the drawing of permissible inference[s] from evidentiary facts" lie squarely within the domain of the ALJ, as the Commissioner's designee. Id. at 222 (quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965) (internal brackets omitted); see also Seavey, 276 F.3d at 10. Similarly, "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts." Rodriguez, 647 F.2d at 222. "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and his conclusions." Knox v. Astrue, 327 F. App'x 652, 656 (7th Cir. 2009) (quoting Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008)). Consequently, this court may disturb the Commissioner's final decision only if it was "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

III.   Discussion

A claimant is disabled for the purposes of SSI and SSDI if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve (12)] months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see also id. §§ 423(a)(1), 1381a, 1382. More precisely, the claimant qualifies as disabled

> if his physical or mental impairment or impairments are of such severity that he is not only able to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A), 1382c(a)(3)(B). The ALJ, as the Commissioner's designee, must follow a five-step sequential evaluation process in determining whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

Kent challenges the ALJ's decision at nearly every stage of the analysis. After careful consideration of the record, the court concludes that the ALJ erred at Step 4 of the sequential evaluation process.

   A.   *Step 1*

At Step 1 of the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity"—or, more specifically, whether the claimant is working. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to the Step 2 of the sequential evaluation process. See id. §§ 404.1520(a)(4)(i); 404.1572(a); 416.920(a)(4)(i); 416.972(a). In this case, the ALJ

determined at Step 1 that Kent "has not engaged in substantial gainful activity since March 1, 2008, the alleged onset date." Kent does not dispute this finding.

      *B. Step 2*

At Step 2, the ALJ assesses "the medical severity of [the claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). In so doing, the ALJ "consider[s] the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." Id. §§ 404.1523; 416.923. The ALJ will deny benefits at this stage if the claimant fails to establish the existence of a severe impairment. Id. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001); see also 20 C.F.R. § 404.1560(c)(2), 416.960(c)(2). Otherwise, the ALJ advances to Step 3 of the sequential evaluation process. See 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Here, the ALJ concluded at Step 2 that Kent's "lumbar spinal pain from degenerative disc disease and sciatica, joint osteoarthritis in the bilateral knees and shoulders, and right shoulder pain" constitute severe medical impairments.

The ALJ also noted that, despite medical evidence of obesity, depression, and anxiety, these conditions do not rise to the level of severity necessary for SSI and SSDI eligibility. Kent challenges these further determinations. However, the court need not address these issues because, "the failure to find a particular impairment severe at [S]tep [2] is not reversible error when the ALJ finds at least one other impairment is severe." Allman v. Colvin, 813 F.3d 1326, 1330 (10th Cir. 2016); accord Arnett v. Astrue, 676 F.3d 586, 591 (7th Cir. 2012); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005); Lewis v. Colvin, No. CV 15-12223-FDS, 2016 WL 4007556, at *7 (D. Mass. July 26, 2016) (Saylor, J.); Jones v. Colvin, No. CIV.A. 12-40061-TSH, 2014 WL 575457, at *11 (D. Mass. Feb. 10, 2014) (Hillman, J.). Here, since the ALJ

found that Kent had other severe impairments at Step 2, the court need not determine whether the ALJ erred in concluding that Kent's obesity, depression, and anxiety did not constitute severe medical impairments at this step.

  C. *Step 3*

At Step 3, the ALJ determines whether the severe impairment or impairments match or are the medical equivalent to a condition contained in the Listing of Impairments in appendix 1 of subpart P of part 404 of chapter 20 of the Code of Federal Regulations (hereinafter "Listing"). 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). For adults, the Listing "describes for each of the major body systems impairments that [SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Id. § 416.925. It "[was] designed as an administratively efficient method of defining those who are *per se* qualified for benefits with no other inquiry necessary." Davidson v. Sec'y of Health & Human Servs., 912 F.2d 1246, 1252 (10th Cir. 1990).

> As the United States Court of Appeals for the First Circuit has explained,
>
> > [a]n impairment 'meets' the listings only when it 'manifests the specific findings described in the set of medical criteria' for a particular listed impairment. Social Security Ruling (SSR) 83-19, West's Social Security Reporting Service (Rulings Supp. Pamph. 1988) 90, 91-92. An impairment 'equals' a listed impairment when the set of symptoms, signs and laboratory findings in the medical evidence supporting the claimant 'are at least equivalent in severity to the set of medical findings for the listed impairment.' Id. at 92. Such equivalency may occur where the claimant suffers from an impairment for which a listing exists and, while 'one or more of the specified medical findings is missing from the evidence[,] . . . other medical findings of equal or greater clinical significance and relating to the same impairment are present in the medical evidence.' Id.

Martinez Nater v. Sec'y of Health & Human Servs., 933 F.2d 76, 77-78 (1st Cir. 1991). The burdens of production and proof rest on the claimant. Freeman, 274 F.3d at 608; see also 20

9

C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). A finding that a claimant does not meet or medically equal a listed impairment does not necessitate a denial of his or her claim; rather, the inquiry proceeds to the next step. Davidson, 912 F.2d at 1252.

Reviewing Kent's claim at Step 3, the ALJ concluded that Kent's impairments do not meet or medically equal the criteria set forth in Listings 1.02 and 1.04. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02 and 1.04. Kent contends that this determination requires reversal.[4] This court disagrees.

    1.  Listing 1.02

Kent argues that the ALJ ignored record evidence when determining that his spinal impairment does not meet or medically equal Listing 1.02 criteria. Listing 1.02 provides the following criteria that a severe medical impairment must meet or medically equal for a claimant to be considered disabled on the basis of "[m]ajor dysfunction of a joint(s)":

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
>     A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in [Listing 1.00(B)(2)(b)];
>
>     or
>
>     B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in

---

[4] Kent cites to Listing 1.03 which references surgery on "a major weight-bearing joint." This appears to be a typographical error, as his argument applies only to Listings 1.02 and 1.04. Further, there is nothing in the record to support a finding that Kent underwent surgery on "a major weight-bearing joint," which may include the hip, knee, or ankle, see 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 1.02(A), 1.03, but not the shoulder, which is a "peripheral joint," id. § 1.02(B).

> inability to perform fine and gross movements effectively, as defined in [Listing 1.00(B)(2)(c)].

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02.

Kent argues that "[t]he clinical evidence presented does not establish . . . inability to ambulate effectively." However, "[i]nability to ambulate effectively means an *extreme* limitation of the ability to walk." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(B)(1) (emphasis added). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without *the use of a hand-held assistive device(s) that limits the functioning of both upper extremities*." Id. (emphasis added).

In light of this definition, there was substantial evidence to support the ALJ's finding that Kent could ambulate effectively. Kent's testimony that he experiences difficulty walking for more than fifteen to thirty minutes does not establish an inability to ambulate effectively because he is able to walk (even if only fifteen to thirty minutes) without utilizing an assistive device. See, e.g., Coleman v. Astrue, 269 F. App'x 596, 603 (7th Cir. 2008) (substantial evidence to negate claim of ineffective ambulation where record demonstrates that claimant did not regularly use assistive device and could occasionally climb ramps and stairs); Sienkiewicz v. Barnhart, 409 F.3d 798, 802-03 (7th Cir. 2005) (walking with "a slight limp" insufficient to establish ineffective ambulation).

   2.  Listing 1.04

Next, Kent contends that the ALJ failed to give due consideration to radiological imaging reports and neglected to contemplate the effect of obesity when evaluating his spinal impairment under the criteria set forth in Listing 1.04. Listing 1.04 relates to "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the

cauda equina) or the spinal cord." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04. To establish presumptive disability under Listing 1.04, the claimant's impairment also must meet or medically equal one of the following criteria:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in [Listing 1.00(B)(2)(b)].

Id.

The ALJ determined that Kent's "spinal impairment does not meet or medically equal the criteria of Listing 1.04" because "[t]he clinical evidence presented does not establish compromise of a nerve root or the spinal cord." Elsewhere in the decision, the ALJ noted that Kent's radiological imaging reports demonstrate "only mild compression of the nerve root" but that "the clinical evidence does not describe significant deficits in strength, mobility, and motor skills."

Assuming without concluding that *any* compression of the nerve root may provide the basis for a spinal impairment finding, there still is substantial evidence to support the

determination that Kent did not meet or medically equal the Listing 1.04 criteria on other grounds. Specifically, substantial evidence exists to support the finding that Kent does not have sensory or reflex loss. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04(A) (requiring that "evidence of nerve root compression" be "accompanied by sensory or reflex loss"). There also is no evidence of spinal arachnoiditis, see § 1.04(B), and, as noted above, substantial evidence exists to support a finding that Kent does not experience an "inability to ambulate effectively," see § 1.04(C). Any failure to consider the radiological imaging reports at this stage, as alleged by Kent, would be harmless. See Jones v. Soc. Sec. Admin., 150 F. App'x 1, 2 (1st Cir. 2005) (stating that SSA's procedural error is harmless if it would not change outcome on appeal (citing Kerner v. Celebrezze, 340 F.2d 736, 740 (2d Cir. 1965))); accord Jones v. Comm'r of Soc. Sec., 492 F. App'x 70, 73 (11th Cir. 2012); Lawrence v. Astrue, 337 F. App'x 579, 586 (7th Cir. 2009); cf. United States v. Hernandez-Vega, 235 F.3d 705, 712 (1st Cir. 2000) ("Whether an error is prejudicial or harmless depends on whether it [affects] the outcome of the case.").

Further, where Kent does not experience sensory or reflex loss, does not have a history of spinal arachnoiditis, and can ambulate effectively within the meaning of the Social Security regulations, the impact of his weight should have no bearing on the determination. For these reasons, the ALJ did not err in finding that Kent's impairments did not meet or medically equal Listing 1.04.

### D.  Step 4

At Step 4, the ALJ first evaluates the claimant's "residual functional capacity," see 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv); see also id. §§ 404.1520(e), 416.920(e), which is defined as "the most [the claimant] can still do despite [his or her] limitations," id. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ then determines whether, in light of the claimant's

13

residual functional capacity, the claimant is able to return to his or her past relevant work. See id. §§ 404.1560(b); § 416.960(b). Again, the claimant carries the burdens of proof and production. Freeman, 274 F.3d at 608; see also 20 C.F.R. § 404.1560(c)(2), 416.960(c)(2). If the claimant cannot perform past relevant work, the ALJ advances to Step 5. See id. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

Here, the ALJ determined that Kent:

> has the residual functional capacity to perform light work[,] . . . except that [he] can occasionally stoop, crouch, crawl, and kneel; occasionally climb ramps and stairs but cannot climb ropes, ladders, or scaffolds. He must avoid concentrated exposure to extreme wetness or humidity and exposure to workplace hazards such as dangerous machinery or workplace heights. [Kent] must have the opportunity to sit and stand at will without being drawn off task, and he could not perform production-rate or pace work.

The ALJ found that Kent "is unable to perform past relevant work" "as a sales associate, software tester, campground caretaker, driver, [or] technical consultant."

Among the multiple errors Kent assigns to this determination is that the ALJ misconstrued Kent's testimony in finding that Kent can perform light work as long as he has the opportunity to sit or stand at will. Specifically, the ALJ noted, *inter alia*, that, "although the claimant described some difficulty walking extended distances such as at a family festival and walking fundraiser, these difficulties merely suggest that the opportunity to sit or stand at will is reasonable." A review of the record before the SSA supports Kent's contention that the ALJ misconstrued the evidence in drawing this conclusion. Kent testified at the hearing that he experienced difficulty walking from his parked car to a family festival he hoped to attend downtown. However, the transcript indicates that he "attempt[ed]" the walk, not that he was able to do it or how far he was able to walk before experiencing difficulty. Moreover, contrary to the ALJ's recitation of the evidence, Kent testified that he does *not* participate in walking

14

fundraisers:

> Q.   . . . What makes your fatigue worse?
>
> A.   . . . [I]f I'm moving around a lot throughout the day, *meaning I am not* necessarily doing constant movement, like constantly walking somewhere, like going on a - - *not* a marathon, what are those, fundraisers, where you just have to walk . . . .

(Emphases added). Kent referred to walking fundraisers to explain what he did *not* mean when he said "moving around a lot." This erroneous recounting of evidence prompted the ALJ to find that Kent could perform work if he had the opportunity to stand and sit at will. The ALJ did not indicate the weight he assigned to this finding in ascertaining Kent's ability to sit and stand at will, nor in determining Kent's residual functional capacity as a whole. Consequently, remand is necessary because the court cannot deem whether the error was harmless.[5]

### E. Step 5

Because the court has concluded that the ALJ erred at Step 4, the court need not venture into Step 5. Nevertheless, to provide some guidance on remand, the court addresses one of Kent's objections to the ALJ's Step 5 determination.

At Step 5, the inquiry turns to whether the claimant can perform other work in light of his or her "residual functional capacity[,] . . . age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). The claimant only will be considered disabled if he or she would be unable to "make an adjustment to other work." Id. Unlike the previous steps, in which the claimant carries the burden of proof, here that burden shifts to the ALJ to "provid[e] evidence that demonstrates that other work exists in significant numbers in the national economy

---

[5] Kent claims a multitude of other errors with respect to the Residual Functional Capacity determination. In light of the decision to remand his application for further review, the court need not address those arguments.

that [the claimant] can do, given [his or her] residual capacity and vocational factors." 20 C.F.R. §§ 404.960(c)(2), 404.1560(c)(2); see also Freeman, 274 F.3d at 608. In so doing, the ALJ "will take administrative notice of reliable job information available from various governmental and other publications, such as the Dictionary of Occupational Titles ("Dictionary of Occupational Titles" or "DOT"), which is published by the United States Department of Labor. 20 C.F.R. §§ 404.966(d), 404.1566(d). The ALJ also may rely on the testimony of a vocational expert. Id. §§ 404.966(e), 404.1566(e).

In Kent's case, the ALJ utilized an impartial vocational expert at the hearing and asked her if jobs exist in the national or regional economy for a person of Kent's age, education, and work experience that

> would be able to work at the light exertional level, but . . . can only occasionally stoop, crouch, crawl, and kneel; can occasionally climb ramps or stairs; cannot climb ropes, ladders or scaffolds, should avoid concentrated exposure to extreme wetness or humidity, [and] . . . exposure to workplace hazards such as dangerous machinery or unprotected heights . . . [and] would require . . . the ability to sit or stand at will without being drawn off task.
> And the person . . . could not do . . . production rate or pace work.

The vocational expert identified three jobs that the individual in the posed hypothetical could perform: (1) "a ticket seller, [DOT number] 211.462-022"; (2) "surveillance system monitor, [DOT number] 379.367-010"; and (3) "telephone order clerk, [DOT number] 249.367-054." In his decision, the ALJ cited the vocational expert's testimony regarding the jobs of ticket seller, surveillance system monitor, and telephone order clerk, with the accompanying codes provided by the vocational expert, as evidence that "there are jobs that exist in significant numbers in the national economy that [Kent] can perform." He therefore concluded that Kent does not have a disability for the purposes of SSI and SSDI and denied his applications at Step 5.

Kent correctly points out that DOT number 211.462-022, which the vocational expert labeled as "ticket seller," is actually listed as "Cashier/Gambling" in the Dictionary of Occupational Titles.[6] A review of the description of Cashier/Gambling reveals that the primary duties of this job involve selling tickets. Id. ("Sells color-coded gambling chips or tickets to patrons or to other workers for resale to patrons"). The discrepancy in the title of the position alone would not indicate that the ALJ erred. Cf. Fisher v. Barnhart, 181 Fed. App'x 359, 367 (4th Cir. 2006) (holding that the ALJ met his burden in finding that a claimant could perform the jobs of "laundry worker" and "nursery worker," even though the code he referenced, based on the vocational expert's testimony, did not exist, because "a change of a single digit in each job code in the vocational expert's testimony leads one to the entries for 'domestic laundry worker' . . . and for 'flower picker.'"). Nevertheless, because the vocational expert did not specify that she was referring to a job in the gambling industry, it is unclear as to whether she took into account Kent's ability to perform in an industry known for its fast pace. On remand, the ALJ should seek clarification before relying on such testimony.

IV.     Conclusion

For the foregoing reasons, the court DENIES the Commissioner's Motion to Affirm the Commissioner's Decision [#29] and ALLOWS Kent's Motion to Reverse and Remand the

---

[6] Plaintiff also argues that the jobs of surveillance system monitor and telephone order clerk do not match the codes in the Dictionary of Occupational Titles as identified by the vocational expert. He is mistaken with respect to the job of surveillance system monitor, see Dictionary of Occupational Titles 379.367-010, 1991 WL 673244 (4th ed. rev. 1991) (listing "379.367-010" as "Surveillance System Monitor"). Further, the code the vocational expert listed for telephone order clerk merely has been updated to a new code in the Dictionary of Occupational Titles. See Bolin v. Sec'y of Health & Human Servs., 25 F.3d 1055 (10th Cir. 1994) (table) (indicating that D.O.T. number 249.367-054 has been changed to 249.362-026); Dictionary of Occupational Titles 249.362-026, 1991 WL 673244 (listing 249.362-026 as "Order Clerk" and indicating that the position "[m]ay be designated according to method of receiving orders as Mail-Order Clerk (clerical); Telephone-Order Clerk (clerical).").

Decision of the Commissioner [#24] in that Kent's application is REMANDED for further proceedings consistent with this opinion.

    IT IS SO ORDERED.

Date: March 15, 2017                                                                     /s/ Indira Talwani
                                                                                            United States District Judge